# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

LEEDOM FINANCIAL SERVICES, LLC,

    Plaintiff,

v.                                                    CASE NO: 8:10-cv-689-T-26TBM

PATRICK EARL BASS,

    Defendant.
_____/

## **O R D E R**

Before the Court is Defendant Bass' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Dkt. 9), Plaintiff's Memorandum in Opposition (Dkt. 12), the affidavit of Christopher Leedom filed in opposition to the motion (Dkt. 11), and the Dismissal without Prejudice filed June 3, 2010, in the Georgia state case of <u>Leedom Financial Services, LLC v. Gino Fedell, et al.</u>, Case No. 08-1-7637-49. (Dkt. 15). After careful consideration of the motion and the applicable law, the Court concludes that this case is properly filed in this Court and declines to dismiss based on lack of personal jurisdiction or transfer based on improper venue.

This case was stayed pending dismissal of the earlier-filed lawsuit in the Superior Court of Cobb County, Georgia, which had claims similar in facts and relief requested to those brought

against Bass in this case.[1]  Plaintiff has filed satisfactory proof that the Georgia state case has been dismissed,[2] and the Court will now address the merits of the motion.

## PERSONAL JURISDICTION

A challenge to personal jurisdiction requires a two-part analysis: (1) whether the complaint sets forth a factual basis for jurisdiction under Florida's long-arm statute, section 48.193, Florida Statutes and (2) whether constitutional minimum contacts and due process notions of fair play have been met.  Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626-27 (11th Cir. 1986); Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989).  In assessing whether the complaint contains sufficient jurisdictional facts, a review of the complaint reveals that some of Plaintiff's claims sound in tort.  Section 48.193 of the Florida Statutes provides long-arm jurisdiction for torts committed within the state, and for injury caused by products or services consumed or used in the state.  Section 48.193 provides in pertinent part:

> (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
>
> (b)  Committing a tortious act within this state.
>
> . . . .
>
> (f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

---

[1]  See docket 14.

[2]  See docket 15 at attachment.

> 1. The defendant was engaged in solicitation or service activities within this state; or
>
> 2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within the state in the ordinary course of commerce, trade, or use.

§ 48.193(1)(b) & (f), Fla. Stat. "A tort claim is deemed to have accrued where the last event necessary to make the defendant liable for the tort took place." Merkin v. PCA Health Plans of Fla., Inc., 855 So.2d 137, 140 (Fla.Dist.Ct.App. 2003). Making telephone calls, sending e-mails, or sending written communications into the state suffice as long as the commission of a tort occurs by taking such action. See Wendt v. Horowitz, 822 So.2d 1252, 1253 (Fla. 2002).

Although the complaint does not contain a specific paragraph delineated as a jurisdictional statement for purposes of personal jurisdiction, the complaint provides a factual basis. Bass, a Georgia resident, was president and chief executive officer of Stratus Group, Inc. (Stratus), a "buy-here-pay-here car dealership" at which cars were leased.[3] Leedom Financial Services, LLC (LFS), with its principal place of business in Sarasota, Florida, entered into an installment sales participation agreement with Stratus in 2005.[4] LFS advanced Stratus fifty percent of unpaid principal and interest owed on the car leases in exchange for an undivided interest in certain vehicle leases.[5] LFS held security interests in the unsold portion of the leases and all other personal property of Stratus.[6]

---

[3] See docket 1 at paragraphs 2, 3 & 5.

[4] See docket 1 at paragraphs 1 & 6.

[5] See docket 1 at paragraph 7.

[6] See docket 1 at paragraph 8.

The complaint further alleges that in 2008, LFS and Stratus entered into a second agreement, a revolving loan agreement, under which LFS would lend more money to Stratus.[7] Pursuant to the revolving loan, LFS agreed to loan up to $15,000,000.00 to Stratus pursuant to a formula based on the leases under which the customers were current.[8] LFS took another security interest in the personal property of Stratus.[9] In loaning additional money to Stratus, LFS relied on inaccurate audit statements, which Bass knew to be inaccurate.[10] The total LFS lent to Stratus was $42,340,000.00, as of May 2008.[11]

After an anonymous tip revealed to LFS that Stratus had misrepresented the number of vehicles under lease, LFS began calling the individual car leaseholders.[12] LFS discovered that many of the vehicles were not even leased by the particular leaseholders.[13] A meeting occurred between Bass and LFS at which Bass admitted his misleading misrepresentations.[14] According to the affidavit of Christopher Leedom, the meeting took place in Florida in June 2008.[15] Before that meeting took place, however, Bass regularly submitted on a monthly basis lease receivables

---

[7] See docket 1 at paragraph 9.

[8] See docket 1 at paragraphs 10 & 11.

[9] See docket 1 at paragraph 12.

[10] See docket 1 at paragraphs 15, 16 & 17.

[11] See docket 1 at paragraph 20.

[12] See docket 1 at paragraphs 21 & 22.

[13] See docket 1 at paragraph 22.

[14] See docket 1 at paragraphs 23, 24 & 25.

[15] See docket 11 at paragraph 17.

to LFS in Florida.[16] In addition to submitting the reports, Bass communicated Stratus' financial condition to LFS through "multiple telephone calls and emails to LFS in Florida."[17] Bass had also met several times in person in Florida before that June 2008 meeting.[18] Mr. Leedom avers that Bass "engaged in a regular course of action with LFS in Florida which included meetings, conference calls, emails and monthly documentation production."[19] Other affiants corroborate Mr. Leedom's statements.[20] Even Bass himself corroborates these statements.[21]

It was eventually discovered that Bass had committed multiple and various misrepresentations about the true health of Stratus. Stratus filed for relief with the bankruptcy court in July 2008.[22] Plaintiff filed the state court action in Georgia after purchasing stock from Bass' uncle in Stratus for the purpose of bringing a shareholder derivative suit.[23] In the Georgia action, Plaintiff sought to stop Bass from continuing to use funds of Stratus for personal gain and

---

[16] See docket 11 at paragraph 6.

[17] See docket 11 at paragraph 8.

[18] See docket 11 at paragraph 9.

[19] See docket 11 at paragraph 28.

[20] See docket 11 at Exh. D (Affidavit of Harlan Keener at paragraphs 9 & 10), Exh. E (Affidavit of James Garvin at paragraphs 2, 5 & 6).

[21] See docket 11 at Exh. F (Deposition of Earl Bass) at p. 134.

[22] See docket 11 at paragraph 22.

[23] See docket 11 at paragraph 23.

to prevent Bass from objecting to the confirmation of the plan of reorganization.[24]  That suit has now been dismissed.[25]

It is obvious from the allegations of the complaint and the counter-affidavits and submissions filed by Plaintiff that Bass has been physically present in Florida and has made numerous misrepresentations in Florida, which are the subject of some of the counts of the complaint.  Bass argues, however, that because he was always acting as the president and chief executive officer of Stratus in his actions taken in Florida, this Court should not exercise personal jurisdiction over Bass.  This Court disagrees.  This case falls within an exception to the corporate shield doctrine for fraud and intentional misconduct.  See Rensin v. State, 18 So.3d 572, 575 (Fla.Dist.Ct.App. 2009).

Plaintiff's submissions substantiate that Bass directed Stratus to pay "management fees" to himself and family members.[26]  Bass admitted at his deposition taken in the bankruptcy proceedings that these "management fees" were "really extra compensation methods, as opposed to individual companies doing specific things for Stratus."[27]  Bass' uncle testified at deposition that Bass made extensive personal purchases for himself and relatives on a company account in excess of $600,000.00.[28]  Bass forwarded inaccurate financial statements to Plaintiff in Florida

---

[24]  See docket 11 at paragraph 20.

[25]  See docket 15.

[26]  See docket 11, Exh. I (Deposition of William R. Rambo) at pp. 19-20, 29-30, 34, 38, 43-44 & 48.

[27]  See docket 11, Exh. F (Deposition of Earl Bass) at p. 70.

[28]  See docket 11, Exh. G (Deposition of Larry Bass) at p. 29.

and made misrepresentations while in Florida.  In Florida, the corporate shield doctrine does not apply to intentional torts calculated to cause injury in Florida or to shield a non-resident corporate officer from his fraud or misconduct directed at parties in Florida.  See Rensin, 18 So.3d at 574-76 (citing to precedent supporting same: Koch v. Kimball, 710 So.2d 5, 7 (Fla.Dist.Ct.App. 1998); Bryon v. Marine Carriers (USA), Inc., 668 So.2d 273, 274 (Fla.Dist.Ct.App. 1996); and Allerton v. State, Dept. of Ins., 635 So.2d 36 (Fla.Dist.Ct.App. 1994)).

Bass has submitted himself to the personal jurisdiction of this Court, meeting both the long-arm jurisdictional and due process requirements.  The long-arm statute, section 48.193(1)(b), for committing a tort within Florida has been satisfied and there is no need to analyze the applicability of section 48.193(1)(f) to this case.  Minimum contacts and constitutional due process have been met through Bass' knowledge that the false and inaccurate audit reports were intended for use in Florida and knowledge that his misrepresentations were either made in Florida or intended to be relied on in Florida.  There is a sufficient nexus to satisfy a reasonable expectation of being haled into Florida for suit.  See Deloitte & Touche v. Gencor Indus., Inc., 929 So.2d 678, 679-80 (Fla.Dist.Ct.App. 2006).

It is therefore **ORDERED AND ADJUDGED** as follows:

(1) Defendant Bass' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Dkt. 9) is **DENIED**.

(2) Defendant shall file his answer within ten (10) days of the date of this order.

**DONE AND ORDERED** at Tampa, Florida, on June 14, 2010.

   s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record